**Affirm and Opinion Filed August 20, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01445-CV

## MONTGOMERY J. BENNETT
## AND EVAN (VAN) LANE SHAW, Appellants
## V.
## MATTHEW ZUCKER, Appellee

### On Appeal from the 330th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF-19-17721

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Osborne

This case and its companion, No. 05-20-00488-CV, arise from the same underlying dispute but present discrete legal issues that resulted in separate judgments. Both cases arise from appellant Montgomery J. Bennett's allegations against appellee Matthew Zucker, an attorney in the law firm that represented Bennett's former wife in their divorce proceedings. Bennett contends that Zucker committed legal malpractice by disclosing Bennett's confidential information in the divorce proceeding. Zucker responds that Bennett signed a release of all claims when the divorce proceeding was concluded. This appeal arises from the trial court's

rulings in a case Bennett initiated as a proceeding under civil procedure rule 202. Bennett and appellant Evan (Van) Lane Shaw challenge the trial court's orders granting Zucker's plea to the jurisdiction and awarding sanctions. We affirm the trial court's sanctions order. We conclude that resolution of appellants' challenge to the order granting Zucker's plea to the jurisdiction is not necessary to final disposition of the appeal.

## BACKGROUND

Zucker was practicing law at Baker Botts L.L.P. when that firm represented Remington Holdings, LP in an acquisition project. Bennett was a part owner of Remington Holdings at the time. Bennett was also the CEO of Ashford, Inc., another entity involved in the transaction. Zucker worked on the transaction but never met or communicated with Bennett. The transaction was terminated on March 31, 2017.

In February 2017, Zucker left Baker Botts and moved to Wick Phillips Gould & Martin, LLP ("Wick Phillips").

On September 13, 2017, the Bennetts' divorce proceeding was filed in the 330th District Court of Dallas County. In March 2018, Wick Phillips undertook representation of Bennett's then-wife Marissa in her divorce from Bennett, joining David Hanschen, who was already serving as Marissa's attorney.

The Bennetts' divorce proceeding concluded with a vigorously-negotiated agreed decree on March 8, 2019. The decree included a release:

B. Release of All Claims by Montgomery J. Bennett:

**Montgomery J. Bennett,** for himself, his heirs, executors, assigns, agents, successors, attorneys, and all others claiming under him, agrees to and does hereby compromise, settle, release and forever discharge **Marissa A. Bennett,** her agents, servants, attorneys, legal representatives and employees, and any and all other persons, firms, organizations, or corporations in privity with **Marissa A. Bennett,** from any and all claims, demands, and causes of action, of whatever kind or character, whether in law or in equity, which it has now or may have in the future, whether known or unknown, based upon any events that have occurred prior to the date the Court signs this Decree, including but not limited to the claims that have been or could have been asserted in the lawsuit. This release is to be construed as the broadest form of general release and includes all claims, whether known or unknown, based upon any events that have occurred prior to the date this Court signs this Decree. Notwithstanding the foregoing description of the scope of this release, nothing herein should be construed as releasing any obligation or duty undertaken in this Decree, and nothing herein should be construed as revoking any right created in this Decree.

The parties dispute when Bennett learned that Zucker was previously employed at Baker Botts but was now working at Wick Phillips. They agree, however, that Bennett was aware of that information before he signed the release.

On June 13, 2019, Bennett filed a proceeding under civil procedure rule 202 in County Court at Law No. 5 of Dallas County. Alleging that Zucker "potentially shared confidential information . . . regarding Bennett" with the lawyers representing Marissa in the divorce, Bennett sought to depose Zucker, Hanschen, and Wick Phillips attorneys Jeffrey Hellberg, Jr. and Bryan Wick.

On June 18, 2019, before the court made any ruling in the rule 202 proceeding, Zucker filed a declaratory judgment action in the 330th Judicial District Court of

Dallas County, the court that had rendered judgment in the Bennetts' divorce (the "Dec Action"). Zucker sought a declaration that Bennett had released any claim he had against Zucker. Specifically, Zucker requested "a declaration of the rights and scope of the Release agreed to by [Bennett] that is contained in the Agreed Final Decree of Divorce signed by [Bennett] on March 5, 2019 and entered by the Court on March 8, 2019." Bennett was served with the Dec Action on July 11, 2019.

On July 25, 2019, Zucker filed a response to Bennett's rule 202 petition in county court. Zucker argued that the rule 202 petition was mooted by the Dec Action and any needed discovery could occur there.

On July 30, 2019, Bennett filed a "First Amended Petition" in County Court at Law No. 5 under the same cause number as his rule 202 proceeding against Zucker (the "Malpractice Action"). He alleged that "[a]s a result of the attorney-client relationship, ZUCKER had and has confidential and detailed knowledge of BENNETT'S assets, how BENNETT'S businesses are structured, different entities BENNETT controls, etc." Bennett alleged a cause of action against Zucker for legal malpractice and sought damages of at least $200,000.00 but not more than $1,000,000.00 "at present," although "as discovery progresses, the claim could be over $1,000,000.00."

By orders of August 21 and 28, 2019, the Malpractice Action was transferred to the 330th District Court "for all further proceedings." The Malpractice Action was not consolidated with the Dec Action already pending in that court, however.

On August 30, 2019, Zucker filed a plea to the jurisdiction and motion to strike the "First Amended Petition" that Bennett had filed in the Malpractice Action. Zucker argued that the court lacked jurisdiction over Bennett's malpractice claim because "this proceeding started as a Rule 202 petition and was improperly converted into a suit for damages." Zucker argued that the only relief available in a rule 202 proceeding is an order for pre-suit depositions, and Bennett had abandoned that request. On October 16, 2019, the trial court granted Zucker's plea to the jurisdiction and motion to strike.

Meanwhile, in the Dec Action, Zucker was deposed on August 30, 2019. He testified that after he joined Wick Phillips, he met for ten to fifteen minutes in the firm's conference room with Marissa Bennett and Hellberg and provided legal advice to Marissa on issues related to her divorce.

The trial court granted Zucker's motion for summary judgment in the Dec Action on October 3, 2019. The trial court declared that the release contained in the Bennetts' divorce decree "operates as a bar to any and all claims, known or unknown" that Bennett may have against Zucker for conduct occurring prior to March 8, 2019, the date of the release. The parties then proceeded to a jury trial on the issue of Zucker's attorney's fees. Bennett has appealed the final judgment in the Dec Action in the companion appeal, No. 05-20-00488-CV. We address those issues in a separate opinion.

Back in the Malpractice Action, Zucker filed a motion for sanctions against Bennett and Shaw on November 6, 2019, alleging that "Bennett embarked upon this litigation to harass Mr. Zucker under the theory that he disclosed Bennett's confidential information in Bennett's divorce lawsuit." On December 2 and 4, 2019, the trial court heard Zucker's motion for sanctions against Bennett and Shaw. Bennett, Zucker, Hellberg, Shaw, and Robert Haiman (another of Bennett's attorneys) testified at the hearing. Based on the evidence presented, the trial court made detailed findings including that Shaw "failed to make a reasonable inquiry" into the legal and factual bases for the pleadings he filed and that Bennett "could not credibly explain how he was damaged" by Zucker's alleged malpractice.

In its order of December 12, 2019, the trial court awarded sanctions against Bennett and Shaw under civil procedure rule 13 and chapter 10 of the civil practice and remedies code. TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE § 10.001–.006. From Bennett, the court awarded Zucker $41,344.50 in attorney's fees. The court specified that none of this amount was attributable to Bennett's filing the rule 202 petition; instead, the entire amount was attributable to Bennett's actions relating to his amended petition alleging that Zucker had committed malpractice. The trial court also awarded conditional appellate attorney's fees.

Against Shaw, "who signed the Rule 202 Petition" and the amended petition alleging the legal malpractice claim, the trial court awarded Zucker $42,844.50 in attorney's fees, $1,500.00 of which was "attributable to Plaintiff's actions with

regard to the 202 Petition," and $41,344.50 attributable to the amended petition alleging the legal malpractice claim. The trial court again ordered conditional appellate fees, but specified that the awards "are not meant to be duplicative." The trial court also ordered Bennett to pay $10,000 and Shaw, $15,000 into the registry of the court "in additional sanctions, as a penalty and to deter him from such future behavior."

In this appeal, Bennett and Shaw challenge the trial court's orders granting Zucker's plea to the jurisdiction and awarding sanctions. In the companion appeal, Bennett challenges the trial court's declaratory judgment and the award of attorney's fees related to it.

## ISSUES

In three issues, Bennett and Shaw contend the trial court erred by (1) granting Zucker's plea to the jurisdiction "because the court in which a Rule 202 petition is filed does not lack subject matter jurisdiction over a matter that could have been separately filed as a lawsuit in that court," (2) sanctioning Bennett and Shaw for filing a Rule 202 petition and then filing the anticipated malpractice suit in the same court, and "by awarding attorney's fees for work on the sanctions motion itself," and (3) awarding sanctions when the evidence did not satisfy the required legal standards.

## A. Plea to the jurisdiction

As we explain below, resolution of Bennett's and Shaw's challenge to the trial court's ruling on Zucker's plea to the jurisdiction is not necessary for disposition of this appeal. For that reason, we need only note here that we review de novo the question whether a court has subject matter jurisdiction, considering evidence of jurisdictional facts, if necessary, under a standard that mirrors our review of summary judgments. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004).

## B. Rule 202

Under civil procedure rule 202.1, "[a] person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions . . . to investigate a potential claim or suit." TEX. R. CIV. P. 202.1(b). Rule 202.2 lists the required contents of a rule 202 petition. Rule 202.3 provides that "witnesses and persons named" in the petition may be served in accordance with rule 21a. Rule 202.4 specifies the requirements for the trial court's order permitting a deposition to be taken, and rule 202.5 explains the "manner of taking and use" of depositions taken under the rule. Under rule 202.4, the trial court "must order a deposition to be taken if, but only if, it finds that: (1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit; or (2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential

claim outweighs the burden or expense of the procedure." TEX. R. CIV. P. 202.4(a). "Courts must strictly limit and carefully supervise pre-suit discovery to prevent abuse of [rule 202]." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (orig. proceeding) (per curiam).

"A party filing a Rule 202 petition does not assert a substantive claim or cause of action." *Houston Tennis Ass'n, Inc. v. Thibodeaux*, 602 S.W.3d 712, 718 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "A Rule 202 proceeding to conduct pre-suit discovery from a party against whom a claim is contemplated is ancillary to the contemplated claim; it is 'in aid of' and incident to the anticipated claim." *In re Clapp,* 241 S.W.3d 913, 917 (Tex. App.—Dallas 2007, orig. proceeding); *Patton Boggs LLP v. Moseley*, 394 S.W.3d 565, 572 n.4 (Tex. App.—Dallas 2011, no pet.).

## C. Sanctions

Chapter 10 of the civil practice and remedies code and civil procedure rule 13 allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Rule 13 authorizes the imposition of the sanctions listed in rule 215.2(b), which provides for a monetary penalty based on expenses, court costs, or attorney's fees. *Id.* Under rule 13, "[t]he signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for

the purpose of harassment." TEX. R. CIV. P. 13. "If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both." *Id.* For purposes of rule 13, "groundless" means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*

When considering a motion for sanctions under rule 13, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ). Rule 13 requires sanctions to be based on the acts or omissions of the represented party or counsel, not merely on the legal merit of the pleading. *Id.* The trial court must hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the alleged groundless petition. *Id.*

Chapter 10, in turn, provides that:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for

–10–

the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE § 10.001; *Low*, 221 S.W.3d at 614–15.

"Under section 10.001, the signer of a pleading or motion certifies that *each* claim, *each* allegation, and *each* denial is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry." *Low*, 221 S.W.3d at 615. The statute dictates that each claim and each allegation be individually evaluated for support. *Id.* The statute also requires the court to describe in its order imposing sanctions "the conduct the court has determined violated section 10.001 and explain the basis for the sanction imposed." TEX. CIV. PRAC. & REM. CODE § 10.005. The sanction imposed "must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* § 10.004(b).

We review a trial court's sanctions order for abuse of discretion. *See Low*, 221 S.W.3d at 614; *Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 61 (Tex. App.—Dallas 2007, no pet.). "A trial court abuses its discretion in imposing sanctions only if it based its order on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Monroe v. Grider*, 884 S.W.2d 811, 816

(Tex. App.—Dallas 1994, writ denied). The trial court as fact finder is the sole judge of the credibility of the witnesses and evidence. *Nnaka v. Mejia*, No. 01-18-00779-CV, 2020 WL 425126, at *7 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, no pet.) (mem. op.) (trial court was entitled to disbelieve all or any portion of attorney's testimony in considering sanctions under rule 13).

## D. Legal malpractice

Bennett's sole cause of action against Zucker is for legal malpractice. To prevail on this claim, Bennett must establish that (1) Zucker owed him a duty of care, (2) Zucker breached that duty, and (3) Zucker's breach proximately caused damage to Bennett. *See Nelson v. Sheedy*, No. 05-16-01262-CV, 2018 WL 2434389, at *3 (Tex. App.—Dallas May 30, 2018, pet. denied) (mem. op.) (citing *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017), and *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016)). "In every case, the plaintiff must supply a causal link between the attorney's alleged negligence and the client's damages." *Rogers*, 518 S.W.3d at 404. "A lawyer can be negligent and yet cause no harm." *Id.* at 400. "And, if the breach of a duty of care does not cause harm, no valid claim for legal-malpractice exists." *Id.* "[A]lthough causation is typically a question of fact, it may be determined as a matter of law when reasonable minds could not arrive at a different conclusion." *Id.* at 401.

DISCUSSION

## A. Plea to the jurisdiction

In their first issue, Bennett and Shaw argue the trial court erred by granting Zucker's plea to the jurisdiction. They contend that "the court in which a Rule 202 petition is filed does not lack subject matter jurisdiction over a matter that could have been separately filed as a lawsuit in that court." Although we identified this issue in a 2008 opinion, we have not decided it. *Lee v. GST Transp. Sys. LP*, 334 S.W.3d 16, 19 (Tex. App.—Dallas 2008, pet. denied) ("And whether it is appropriate to allege a lawsuit for the first time in an 'amended petition' in the same cause number as a rule 202 petition is not an issue we need to address.").[1]

Similarly here, that question remains for another day. As we discuss at length below, Bennett's and Shaw's dispositive appellate complaints are about the amount of sanctions awarded and the basis for them. The record reflects that, contrary to Bennett's and Shaw's contention, the basis for the sanctions was not the mere filing of the amended petition. Instead, the trial court awarded sanctions because it found the rule 202 and amended petitions to be groundless and made in bad faith. The trial court's findings turned on the petitions' substance: that Bennett and Shaw were requesting discovery about or seeking damages for claims they had knowingly

---

[1] We considered a similar question in *Patton Boggs LLP*, 394 S.W.3d at 572, concluding that a court in which a rule 202 petition was pending lacked jurisdiction over the opposing party's motion to compel arbitration. In that case, however, no "amended petition" had been filed by the rule 202 movant in an attempt to convert the rule 202 proceeding into a lawsuit. *See generally id.*

released fully and finally in the divorce proceedings. The trial court expressly found that "the 202 Petition and Bennett Malpractice Action were not filed after a reasonable inquiry, [and] were filed and presented for the improper purpose of harassing Mr. Zucker." On this record, and given the issues as presented by Bennett and Shaw, our disposition of this appeal does not depend on whether the trial court erred by granting Zucker's plea to the jurisdiction. Instead, it turns on the propriety of the sanctions the trial court assessed against Bennett and Shaw for filing the pleadings at all, regardless of the trial court's jurisdiction over the amended petition. In sum, because resolution of Bennett's and Shaw's first issue is not "necessary to final disposition of the appeal," *see* TEX. R. APP. P. 47.1, we need not consider it further.

**B. Sanctions**

In their second issue, Bennett and Shaw complain that the trial court erred by sanctioning them for "merely filing" a Rule 202 petition "and amending that petition" because "[t]hose are not sanctionable acts." They also argue that the trial court erred by including in the sanctions award Zucker's attorney's fees for "time spent filing and arguing the sanctions motion itself." These complaints, like those in the third issue, challenge the basis for the trial court's sanctions award and the sufficiency of the evidence to support it. Consequently, we discuss the second and third issues together, first considering the basis for the sanctions and then reviewing the attorney's fees award.

## 1. Basis for sanctions

Challenging the basis for the sanctions award, Bennett and Shaw argue that their "decision to seek more information first" by filing a rule 202 petition "was not a sanctionable act." They contend that when they filed the rule 202 petition, they suspected "there was no other explanation of how Wick Phillips knew of Bennett's oral business agreements when they were negotiating the [divorce decree]." Bennett testified that the oral agreements in question related to "Remington Holdings and its form and items related to it."[2]

There was evidence, however, that Bennett had already disclosed the information in question in the divorce proceedings before Wick Phillips appeared as Marissa's counsel. Shaw testified he did not review any discovery materials or pleadings from the divorce proceedings before filing the rule 202 petition. He

---

[2] Bennett and Shaw argue the trial court's findings about their credibility were based on its mistaken finding that there were inconsistencies between their testimony and the documentary evidence. They contend that Bennett was "interrupted and cut off" when he "tried to explain" what "transaction Bennett suspected Zucker had discussed with Mrs. Bennett and the Wick Phillips lawyers." On redirect examination, however, Bennett testified without interruption that "the issue" was "around Remington's formation, the timing of the formation, whether it was written or oral, the fact that it was Delaware instead of Texas, how it relates to Texas entities and the assignment that happened early on about assigning its economic interest, but not everything, but its economic interest," a "legal analysis" that he "paid a ton of money to Baker Botts to discover." He testified he was concerned that Wick Phillips had obtained this confidential information because it took the position in the divorce that distributions from Remington were "deemed to have gone to me personally, [and] therefore, [were] community property." Zucker, in turn, introduced evidence that Bennett filed an affidavit in the divorce proceeding containing information about the business agreements in question two months before Marissa retained Wick Phillips to represent her in the divorce proceeding and sought summary judgment on the ground that the Remington entities were his separate property. The trial court was the sole judge of the credibility of the witnesses and evidence on this issue, and the court expressly found that Bennett's "sworn testimony is not credible" for reasons specifically discussed in the findings. *See Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.) ("In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony.").

admitted he did no investigation "to determine what confidential information Mr. Zucker might have disclosed." He reviewed the release provision but "[n]othing else." In the amended petition, filed without any attempt to establish the required foundation for rule 202 discovery, Bennett alleged damages "over the amount of $200,000 but not more than $1,000,000.00 at present," and further alleged that "as discovery progresses, the claim could be over $1,000,000.00." We conclude the trial court did not abuse its discretion in finding that "Mr. Shaw failed to make a reasonable inquiry into the legal and factual bases of the claims he made at the time the pleadings were filed."

Next, Bennett and Shaw argue that sanctions must be based on knowledge the attorney and client had at the time of the allegedly sanctionable action, not hindsight. They contend that the trial court's ruling in the Dec Action—that Bennett released any claims he had against Zucker—came after they filed the rule 202 and amended petitions. They argue that Bennett relied in good faith on his attorney's determination that the release did not apply to Zucker. They also argue they did not know until Zucker's deposition that he was claiming to be in the category of Marissa's "attorneys" under the release.

But Bennett testified that at the time he filed the rule 202 petition, he already had enough information to support a claim for legal malpractice against Zucker:

> Q. (By Mr. Welch) Mr. Bennett, at the time the 202 was filed did you believe you had enough information to bring a full blown lawsuit?
>
> A. Absolutely.

Q. Okay. And why did you bring a 202 then?

A. On advice of counsel.

Shaw then explained that he advised Bennett to file the rule 202 petition first:

> I was being conservative by filing a 202 and I wanted more information about Mr. Zucker's role at Wick Phillips and why Wick Phillips took the case and what Zucker's divulging was on the conflicts, Mr. Zucker's. I knew the release that was signed. I knew the release applied to Marissa Bennett's lawyers, not every lawyer at Wick Phillips for the history of Wick Phillips.

Rule 202 depositions are not intended for routine use. *In re Elliott*, 504 S.W.3d 455, 460 (Tex. App.—Austin 2016, orig. proceeding). "Courts must strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule." *Id.* (internal quotation omitted). The trial court "must order a deposition to be taken if, but only if, it finds that . . . the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure." *Id.* (quoting TEX. R. CIV. P. 202.4(a)(2)). No such finding was made by the trial court here, because Bennett and Shaw never offered any evidence to support it. A trial court does not abuse its discretion in awarding sanctions where the rule 202 petitioner's claims have no basis in law or fact and are not warranted by good faith argument for the extension, modification, or reversal of existing law. *See In re Lewis*, No. 05-08-01541-CV, 2010 WL 177817, at *4 (Tex. App.—Dallas Jan. 20, 2010, no pet.) (mem. op.) (affirming sanctions award based on filing of rule 202 petition that was groundless and was also made in bad faith or for purposes of harassment).

Bennett and Shaw contend Zucker violated the disciplinary rules, which "simply forbid the representation without regard to whether confidences were breached." They argue that two irrebuttable presumptions arise from the evidence that Zucker worked on Bennett's file[3] at Baker Botts: first, that Zucker obtained client confidences, and second, that he shared them with Wick Phillips. Assuming these arguments are correct, however, an essential element of Bennett's legal malpractice claim was that Bennett was damaged by Zucker's negligence. *See Nelson*, 2018 WL 2434389, at *3.

Zucker contends there was no good faith claim that Bennett suffered any damages. Bennett and Shaw respond that their objective in filing the rule 202 petition was to investigate that very question, and the trial court erred by concluding they acted in bad faith by doing so. But the trial court's conclusion was based on its findings that Bennett entered into the release in bad faith, intending to retain claims against Zucker and Wick Phillips despite the release's unambiguous terms. Zucker offered evidence to support these findings. The record reflects that Bennett knew, before he signed the release, that Zucker had worked on Remington's file at Baker Botts and was now practicing at Wick Phillips. There was evidence of Bennett's animosity against Wick Phillips as a result of Bennett's agreement to pay Marissa's attorney fees in the acrimonious and expensive divorce proceedings. There was

---

[3] The parties also dispute whether Zucker, while at Baker Botts, ever represented Bennett individually rather than one or more of the entities in which Bennett had an interest.

evidence that Bennett and his lawyers discussed obtaining, and attempted to negotiate, a release that excluded Wick Phillips and its lawyers. And there was evidence that Marissa's lawyers rejected Bennett's deletion of the provision in question. Accordingly, and as we discuss at more length in the companion appeal, the decree included a broadly-worded release of claims against Marissa's "agents, servants, attorneys, legal representatives and employees" that was "to be construed as the broadest form of general release" of "all claims, whether known or unknown, based upon any events that have occurred prior to the date this court signs this Decree." In sum, the evidence supported the trial court's findings that Bennett's and Shaw's intent in filing both the rule 202 petition and the amended petition was to harass Zucker and Wick Phillips, and that both petitions were "utterly and completely groundless, with no basis in law or fact."

Regarding the amount of the sanctions, the trial court's sanctions order and both parties' briefs include charts listing the factors identified in *Low v. Henry*[4] to

---

[4] The nonexclusive factors identified in *Low v. Henry* are:

a. the good faith or bad faith of the offender; b. the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense; c. the knowledge, experience, and expertise of the offender; d. any prior history of sanctionable conduct on the part of the offender; e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct; f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct; g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area; h. the risk of chilling the specific type of litigation involved; i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction; j. the impact of the sanction on the offended party, including the offended person's need for compensation; k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction; l. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and

"guid[e] the often intangible process of determining a penalty for sanctionable behavior." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 372 and n.29 (Tex. 2014) (citing *Low*, 221 S.W.3d at 620–21 and n.5). A trial court is not required to address all of the factors, but "should consider relevant factors" in assessing the amount of the sanction. *Nath*, 446 S.W.3d at 372 (citing and quoting *Low*, 221 S.W.3d at 620–21).

Bennett and Shaw make the following arguments challenging the trial court's findings on the *Low v. Henry* factors:

- It is not bad faith to file a rule 202 petition to investigate facts, especially when acting on an attorney's advice about applicability of a release provision;

- Bennett disliked Zucker but did not demonstrate a high degree of vindictiveness, and the allegations were not frivolous. Once Zucker was deposed, Bennett and Shaw learned that Zucker had in fact advised Marissa;

- Zucker never incurred any out-of-pocket expenses because his firm is representing him and has not asked him to pay any of its bills;

- There is no evidence that Zucker suffered any prejudice from the suit;

- Bennett and Shaw were not culpable in any way;

- The trial court's sanctions are chilling because they discourage the use of rule 202 to investigate attorney malpractice claims;

---

other court costs; . . . . n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought. . . ."

*Low*, 221 S.W.3d at 620 n. 5 (internal quotations omitted).

- The sanctions award would have a significant financial impact on both Bennett and Shaw;

- Zucker would not have been sued for malpractice until after his rule 202 deposition had he not filed the declaratory judgment action;

- The sanction is excessive and includes amounts not authorized by any rule or statute;

- The trial court found that the jurisdiction of three civil district courts was invoked, but it was only two; and

- Zucker's own behavior—filing a lawsuit "to declare that Bennett would not win a malpractice suit"—caused all of the fees Zucker was awarded.

Zucker responds that the record supports the trial court's findings under *Low*. Regarding Bennett's and Shaw's intent in filing the rule 202 petition, Zucker argues that only a small portion of the monetary sanctions—$1,500 of the approximately $41,000 awarded—was "attributable to Plaintiff's actions with regard to the 202 petition," and the award was only against Shaw, not Bennett. Zucker contends the trial court's rulings make clear that the $1,500 award was premised on Shaw's failure to make any "reasonable inquiry" about the basis for the claims before filing the rule 202 petition, not the filing of the rule 202 petition itself. Because there was evidence to support the trial court's finding that "Mr. Shaw failed to make a reasonable inquiry into the legal and factual bases of the claims he made at the time the pleadings were filed," including Shaw's admission that he did not review any of the information Bennett had produced in the divorce proceeding before Wick Phillips's appearance in the case, we conclude that the trial court did not abuse its discretion in making its $1,500 award against Shaw.

The remainder of the sanctions awarded—$41,344.50, supported by evidence of Zucker's attorney's fees, as we discuss below—was based on Bennett's and Shaw's filing of the Malpractice Action. In response to Bennett's and Shaw's arguments under the *Low* factors, Zucker relies on the trial court's findings that:

- Bennett "had animus towards the attorneys of Wick Phillips, including referring to its attorneys as unethical and liars," and had a "cavalier attitude towards the triggering of Wick Phillips' legal malpractice insurance policy";

- "[T]here was no evidentiary support for the factual contention that confidential information had been disseminated by Zucker"; Bennett failed to explain how the alleged confidential information was used in the divorce proceeding or how he was damaged as a result; and Bennett's "attempts to offer such an explanation, were not credible";

- Bennett is an experienced businessperson "and has been involved personally in multiple lawsuits," and Shaw "is an experienced trial attorney, has specific knowledge of the requirements of legal malpractice actions, and has some history of sanctions in other litigation." Both Bennett and Shaw have "the capability of answering the sanctions awarded";

- Zucker has suffered prejudice because he had never been sued before this lawsuit and neither he nor his firm had been required to place their malpractice insurance carrier on notice of a claim as a result of his conduct;[5]

- "[T]he 202 Petition and Bennett Malpractice Action were not filed after a reasonable inquiry." They "were filed and presented for the improper purpose of harassing Mr. Zucker," and "the 202 Petition was converted

---

[5] Zucker also relies on his own testimony that the lawsuit has "been very stressful and it has distracted me from my work and my family." He testified he is concerned about his professional reputation as well, noting that his former Baker Botts colleagues are aware of Bennett's accusations. He testified, "My concern is that the accusations alone are going to make people not want to work with me in the future." Further, Zucker argues that he presented detailed evidence of his attorney's fees and has agreed to pay them. He contends that proof of fees actually paid is not a prerequisite to recovery.

into the Bennett Malpractice Action to needlessly increase litigation costs";[6]

- Bennett and Shaw "create[d] unnecessary expense" and "needlessly prolong[ed] litigation" by filing the Malpractice Action rather than asserting a counterclaim in Zucker's already-filed Dec Action; and

- Zucker's "behavior did not contribute to the expenses for which recovery is sought."

After a review of the entire record, the parties' contentions, and the applicable law, we conclude the trial court did not abuse its discretion in imposing sanctions. *See Low*, 221 S.W.3d at 614. The trial court's comprehensive order—seventeen pages in which the trial court made detailed fact findings, assessed the credibility of the evidence, cited legal authority, applied appropriate standards, and explained its conclusions of law—is supported by the record and by applicable law. *See Monroe*, 884 S.W.2d at 816 (trial court abuses its discretion in imposing sanctions only if its order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence). We decide Bennett's and Shaw's challenges to the basis for the sanctions in their second and third issues against them.

### 2. Attorney's fee award

Bennett and Shaw make three arguments about the attorney's fees awarded to Zucker: (1) civil practice and remedies code section 10.004(b)(3) only permits recovery of fees for "reasonable expenses incurred by the other party because of the

---

[6] Before reaching this conclusion, the trial court made detailed, specific fact findings including that Bennett's and Shaw's testimony regarding the alleged dissemination confidential information "was wholly inconsistent with the documentary evidence admitted on this issue."

filing of the pleading or motion" signed in violation of section 10.001, not fees incurred for filing and prosecuting the motion for sanctions itself; (2) the fees incurred for the sanctions hearing were only "vaguely described"; and (3) the description of appellate fees was "insufficient to satisfy the requisite legal standards."

In their first argument, Bennett and Shaw contend recoverable fees "would only include Wick Phillips' fees charged to Zucker for responding to the Rule 202 petition and objecting to the 'conversion' of it into the malpractice suit by filing the plea to the jurisdiction," not fees incurred "for time spent on the sanctions motion and hearing." They rely on section 10.004(b)(3)'s language alone and do not refer us to any case law to support their interpretation. As Zucker argues, however, the trial court relied on rule 13 as well as Chapter 10 as a basis for sanctions, and Bennett and Shaw have not challenged recovery of the fees under rule 13. *See* TEX. R. CIV. P. 13 (permitting sanctions under rule 215-2b, including attorney's fees, against offending party). Consequently, any error in the trial court's ruling under Chapter 10 is harmless. *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.).[7]

---

[7] In *Oliphant Financial*, we explained that "[i]f an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment." 295 S.W.3d at 424.

Next, Bennett and Shaw challenge the sufficiency of the evidence to support the attorney's fees awarded for trial and appeal. The trial court ordered Bennett and Shaw to pay Zucker $41,344.50 in attorney's fees and an additional $82,500 in appellate fees awarded incrementally should Zucker prevail on appeal. Bennett and Shaw argue that Zucker's attorneys had to complete only four tasks in response to the rule 202 petition: opposing consolidation in the county court, seeking transfer to the family court, filing and arguing the plea to the jurisdiction, and filing for a protective order to prevent Zucker's deposition until the court ruled on his plea to the jurisdiction. They contend the evidence to support the fees awarded "for those limited and uncomplicated tasks was insufficient."

Hellberg testified about Zucker's attorney's fees. He offered Wick Phillips's redacted bills and prepared spreadsheets segregating the time applicable to the Malpractice Action. Bennett and Shaw argue that the descriptions in the redacted bills, such as "attention to" a particular matter, were too vague. They also contend there was no "market-rate hourly fee evidence to support reasonableness," and there was no testimony to support the appellate fees awarded.

Hellberg testified that he is board certified in civil trial law and civil appellate law. He has practiced law in Dallas for twenty years and is familiar with the rates charged for civil trials and appeals. He testified that he is also familiar with "the time it takes to try legal malpractice defense cases." He identified Exhibit 11 as attorney's fees invoices to Zucker from Wick Phillips. He also identified Exhibits 12 and 12-A,

documents he prepared to show which fees from Exhibit 11 were sought "related to the 202 case" and the amended petition seeking damages for legal malpractice. Exhibits 12 and 12-A excluded fees incurred in the Dec Action as well as reflecting Hellberg's "discretionary reductions" in the amounts charged. Bennett's counsel cross-examined Hellberg at length about his testimony, the exhibits, and the fees charged.

As Bennett and Shaw argue, the supreme court in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP* held that "a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." 578 S.W.3d 469, 501–02 (Tex. 2019). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502.[8] Zucker's evidence included this information.

Hellberg explained that he considered the court's opinion in *Rohrmoos* as well as several other cases and rules setting out requirements for proof of attorney's fees.

---

[8] Bennett and Shaw also cite *Nath v. Texas Children's Hospital*, where the court explained that "[c]onclusory affidavits containing mere generalities about the fees for working on [the sanctioned party's] frivolous claims are legally insufficient to justify the sanction awarded here." 576 S.W.3d 707, 710 (Tex. 2019) (per curiam). In *Nath*, the only evidence of attorney's fees was presented in several "conclusory affidavits" lacking both the reasonable hours worked and the reasonable hourly rate. *See id.* Here, in contrast, Zucker offered Hellberg's live testimony and detailed exhibits including both of the elements missing in *Nath*.

The redacted invoices in Exhibit 11 include columns showing the date work was performed, the person performing the work, a description of the work, the number of hours spent, the hourly rate charged, and the total amount charged. The only redactions made were in some of the work descriptions. Exhibits 12 and 12-A include columns for the dates fees were incurred, the timekeeper performing the services, the hours spent, the rate charged, the billed total, and the narrative explanation for the work performed. Hellberg also testified that he reduced some of the amounts charged according to what he considered to be a reasonable fee for the services performed, and he did not increase any of the amounts charged. We conclude that Hellberg's testimony and the accompanying exhibits were sufficient to support the trial court's award of attorney's fees.

Bennett and Shaw also challenge the trial court's contingent award of appellate attorney's fees because the evidence to support the award "was not more than a scintilla." In response, Zucker cites the supreme court's opinion in *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). In *Yowell*, the court explained that the lodestar analysis of *Rorhmoos* "applies to situations in which an objective calculation of reasonable hours worked can be employed." *Id.* (internal quotation omitted). The court continued:

> That is not the situation with respect to contingent appellate fees, which have not yet been incurred and thus must be projected based on expert opinion testimony. At the point when fees are awarded by the trial court, any appeal is still hypothetical. There is no certainty regarding who will represent the appellee in the appellate courts, what counsel's

> hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise.
>
> Of course, this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services.

*Id.* (citations omitted). In accordance with *Yowell*, Hellberg testified to a reasonable "blended" hourly rate, considering his normal billing rate and the rates other lawyers in the firm with less experience, and a "reasonable amount of time" for each level of appeal. We conclude Hellberg's testimony was sufficient to support the trial court's award of trial and appellate attorney's fees. *Cf. KBIDC Invs., LLC v. Zuru Toys, Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *24 (Tex. App.—Dallas Oct. 9, 2020, pet. filed) (mem. op.) (evidence of appellate attorney's fees was insufficient where testimony did not "provide the reasonable hourly rate for any of the reasonable and necessary services for the appeals process").

We conclude the trial court did not abuse its discretion regarding the amount of sanctions awarded. *See Low*, 221 S.W.3d at 614. We decide Bennett's and Shaw's second and third issues against them.

## CONCLUSION

We affirm the trial court's December 12, 2019 "Order on Motion for Sanctions."

–28–

/Leslie Osborne//

LESLIE OSBORNE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MONTGOMERY J. BENNETT
AND EVAN (VAN) LANE SHAW,
Appellants

No. 05-19-01445-CV     V.

MATTHEW ZUCKER, Appellee

On Appeal from the 330th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-19-17721.
Opinion delivered by Justice
Osborne. Justices Pedersen, III and
Nowell participating.

In accordance with this Court's opinion of this date, the trial court's December 12, 2019 Order on Motion for Sanctions is **AFFIRMED**.

It is **ORDERED** that appellee Matthew Zucker recover his costs of this appeal from appellants Montgomery J. Bennett and Evan (Van) Lane Shaw.

Judgment entered this 20th day of August, 2021.